C. BROOKS CUTTER (SBN 121407)
JOHN R. PARKER, JR.  (SBN 257761)
**KERSHAW, CUTTER & RATINOFF, LLP**
401 Watt Avenue
Sacramento, California 95864
Telephone:     (916) 448-9800
Facsimile:     (916) 669-4499
E-mails:      bcutter@kcrlegal.com / jparker@kcrlegal.com

MYCHAL WILSON (SBN 236189)
**THE LAW OFFICE OF MYCHAL WILSON**
The Water Garden
2425 Olympic Blvd., Suite 4000-W
Santa Monica, CA 90404
Telephone:     (424) 252-4232
Facsimile:     (310) 424-7116
Email: Mychal@mychalwilsonesq.com

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. Frank Solis, Relator, | Case No. 2:09-cv-03010-MCE-EFB |
| STATE OF DELAWARE ex rel. Frank Solis, Relator, | **OPPOSITION TO MILLENNIUM PHARMACEUTICALS, INC., SCHERING-PLOUGH, AND MERCK & CO, INC.'S MOTIONS TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT** |
| STATE OF COLORADO ex rel. Frank Solis, Relator | |
| DISTRICT OF COLUMBIA ex rel. Frank Solis, Relator, | |
| STATE OF FLORIDA ex rel. Frank Solis, Relator, | Date: July 24, 2014 Time: 2:00 p.m. Judge: Hon. Morrison C. England, Jr. Location: Courtroom 7, 14th Floor |
| STATE OF GEORGIA ex rel. Frank Solis, Relator, | |
| STATE OF HAWAII ex rel. Frank Solis, Relator, | |
| STATE OF ILLINOIS ex rel. Frank Solis, Relator, | |
| STATE OF INDIANA ex rel. Frank Solis, | |

1   Relator,

2   STATE OF LOUISIANA ex rel. Frank
3   Solis, Relator,

4   STATE OF MARYLAND ex rel. Frank
    Solis, Relator,
5

6   STATE OF MASSACHUSETTS ex rel.
    Frank Solis, Relator,
7
    STATE OF MINNESOTA ex rel. Frank
8   Solis, Relator

9   STATE OF MICHIGAN ex rel. Frank
    Solis, Relator,
10

11  STATE OF MONTANA ex rel. Frank Solis,
    Relator,
12

13  STATE OF NEVADA ex rel. Frank Solis,
    Relator,

14  STATE OF NEW HAMPSHIRE ex rel.
15  Frank Solis, Relator,

16  STATE OF NEW JERSEY ex rel. Frank
    Solis, Relator,
17

18  STATE OF NEW MEXICO ex rel. Frank
    Solis, Relator,
19
    STATE OF NEW YORK ex rel. Frank
20  Solis, Relator,

21  STATE OF OKLAHOMA ex rel. Frank
    Solis, Relator,
22

23  STATE OF RHODE ISLAND ex rel. Frank
    Solis, Relator,
24

25  STATE OF TENNESSEE ex rel. Frank
    Solis, Relator,
26
    STATE OF TEXAS ex rel. Frank Solis,
27  Relator,

28  STATE OF VIRGINIA ex rel. Frank Solis,

Relator,

STATE OF WISCONSIN ex rel. Frank Solis, Relator,

STATE OF MINNESOTA, ex rel. Frank Solis, Relator,

STATE OF NORTH CAROLINA, ex rel. Frank Solis, Relator,

STATE OF WASHINGTON, ex rel. Frank Solis, Relator,

STATE OF CONNECTICUT, ex rel. Frank Solis, Relator,

STATE OF COLORADO, ex rel. Frank Solis, Relator,

STATE OF MARYLAND, ex rel. Frank Solis, Relator,

vs.

MILLENNIUM PHARMACEUTICALS, INC., SCHERING-PLOUGH CORP., MERCK & CO.,

Defendants.

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...................................................................................................1

II. SUMMARY OF RELATOR'S ALLEGATIONS ....................................................2

III. ARGUMENT .....................................................................................................4

    A. Legal Standard..............................................................................................4

    B. Relator Pleads All the Elements of an FCA Claim With Particularity. .........4

        1. Defendants Fraudulently Increased the Number of False Claims.............5

            a. Defendants Gave Kickbacks to Reward Doctors For Prescribing
               Integrilin and Avelox...........................................................................5

            b. Defendants Improperly Marketed Integrilin. .....................................7

        2. Defendants Knew Their Actions Were Fraudulent....................................7

        3. Defendants' Fraudulent Conduct Caused Doctors and Hospitals to Submit
           False Claims. .........................................................................................9

        4. The Government Reimbursed Defendants' False Claims........................12

    C. Relator Alleges a Viable False Claims Act Violation Predicated on the Anti-
        Kickback Statute. .....................................................................................13

    D. Relator's Claims Do Not Implicate the First Amendment...........................13

    E. Relator Has Adequately Pleaded The State Law Claims, Which Are Not Barred........14

        1. No Applicable Statute of Limitations Bars Relator's Claims. .................14

OPPOSITION TO MOTIONS TO DISMISS

1

2

2. Invoked Statute Did Not Exist At Time In Question. ...............................................15

3. Defendants' Personal Jurisdiction Defense Fails.....................................................15

4. There Is A Private Right Of Action In Colorado, New Hampshire,
      Maryland, and Texas. .........................................................................................16

IV. CONCLUSION...........................................................................................................17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTIONS TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Armistead v. Cherokee County School District*, 144 Ga. App. 178 (1977) ..................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................4

*Attorney Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343
    (Mich. Ct. App. 2011) ..............................................................................................................17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................................11

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ............................................................................16

*Duxbury v. Ortho Biotech Products, L.P.*, 579 F.3d 13 (1st Cir. 2009) .......................................11

*Ebeid v. Lungwitz*, 616 F. 3d 993 (9th Cir. 2010).........................................................................10

*Hendow v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006).........................................4, 5, 12

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................16

*Maa v. Ostroff*, 2013 U.S. Dist. LEXIS 57433 .............................................................................12

*Milbradt v. Margaris*, 693 P.2d 78 (Wash. 1985).........................................................................15

*U.S. ex rel. Bly–Magee v. Calif.,* 236 F.3d 1014 (9th Cir.2001)......................................................4

*U.S. ex rel. Ebeid v. Lungwitz,* 616 F.3d 993 (9th Cir.2010)...........................................................4

*U.S. ex rel. Westmoreland v. Amgen, Inc.*, 812 F.Supp.2d 39 (D.Mass. 2010) ..............................5

1

2

*U.S. ex rel.Wilkins v. United Health Group, Inc.,* 659 F.3d 295 (3d Cir. 2011)............................5

3

*U.S. ex rel. Franklin v. Parke-Davis,* 2003 U.S. Dist. LEXIS 15754
    (2003 D. Mass.)..............................................................................................9, 11

4

5

*U.S. v. McClatchey,* 217 F.3d 823 (10th Cir. 2000)................................................10, 13

6

7

*United States ex rel. Carter v. Halliburton Co.,* 710 F.3d 171 (4th Cir. 2013) ............................14

8

*United States ex rel. Hutcheson v. Blackstone Med. Inc.,* 647 F.3d 377
    (1st Cir.2011) ..............................................................................................5, 9

9

10

*United States ex rel. Kosenske v. Carlisle HMA, Inc.,* 554 F.3d 88
    (3d Cir.2009) ..............................................................................................6

11

12

*United States v. Weingarden,* 486. F.Supp. 410 (E.D. Mich. 1979) ............................................13

13

14

*Walker v. State,* 132 Ga. App. 274 (1974) ............................................................15

15

16

*Wisconsin v. Mitchell,* 508 U.S. 476 (1993) ............................................................14

17

*Yess v. Ciba–Geigly Corp.,* 317 F.3d 1097 (9th Cir.2003) ..............................................4

18

19

## STATUTES AND REGULATIONS

20

21 C.F.R. §201.57 ............................................................................................7

21

22

18 U.S.C. 3287 ............................................................................................14

23

24

21 U.S.C. § 301 ............................................................................................5

25

21 U.S.C. §331(a) ............................................................................................7

26

27

21 U.S.C. §331 (b) ............................................................................................7

28

21 U.S.C. §352(a) ............................................................................................7

21 U.S.C. §352(f) ...................................................................................................7

21 U.S.C. §352(n) ..................................................................................................7

31 U.S.C. § 3729(a)(1)(A) ....................................................................................13

31 U.S.C. § 3729 (a)(1)(A)-(C) ..............................................................................8

31 U.S.C. § 3729(b) ................................................................................................8

42 U.S.C. §1320a-7b(b)(1) ...................................................................................13

42 U.S.C. §1320a-7b(b)(2)(B) ..............................................................................13

42 U.S.C. § 1320a-7b(b), *et seq.* ...........................................................................1

42 U.S.C. §1395ww(d) .........................................................................................10

68 F.R. 23738 .........................................................................................................2

Colorado Revised Statutes, Section 25.5-4-306(2)(a) ..........................................16

Colorado Revised Statutes, Section 25.5-4-306(3)(c) ..........................................16

Conn. Gen. Stat. § 17b-301d(b) ...........................................................................17

D.C. Code § 2-381.05 ...........................................................................................14

Ga. Const. Art I, § I, Para. X; Minn. Stat. § 645.21; Mon. Code Ann. § 1-2-109 ........15

Louisiana Revised Statute § 46:439.4(D) .............................................................14

MCL 600.2946(5) .................................................................................................17

Md. Code Health-Gen. §2-604(a)(1)(i) ................................................................17

v

N.H.Rev.Stat. Ann. § 167:61–c(II)(e) (Supp. 2011) ....................................................................17

**<u>RULES</u>**

Fed.R.Civ.P. 9(b) ...................................................................................................................4

Fed. R. Civ. P. 12(g)(2).........................................................................................................16

OPPOSITION TO MOTIONS TO DISMISS

# I. INTRODUCTION

Defendants Millennium Pharmaceuticals, Inc., Schering-Plough, and Merck & Co, Inc. (collectively, "Defendants")[1] seek to dismiss Relator's Second Amended Complaint ("SAC") under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. These motions should be denied because Relator Frank Solis meets and exceeds the pleading standards required by Rules 12(b)(6) and 9(b). The SAC describes Defendants' alleged actions from 2002-2009 to bribe and convince doctors to write prescriptions of Integrilin for off-label uses. The SAC pleads that Defendants undertook a fraudulent course of conduct by describing the kickbacks and marketing techniques used to fraudulently promote Integrilin and Avelox in detail. He alleges that this conduct caused doctors to write prescriptions for Medicare, Medicaid, and TRICARE patients, resulting in the presentation of millions of dollars in false claims to the government. His allegations are specific enough to inform Defendants of the "precise misconduct" charged.

Mr. Solis alleges particular details of Defendants' scheme that violate the Medicare and Medicaid Anti-Kickback Laws, 42 U.S.C. § 1320a-7b(b), *et seq.,* including expensive meals bought for physicians, payment for physician office parties at bars and expensive restaurants, paid speaker events where the physicians were paid thousands of dollars in honoraria for making "canned" presentations, and grants given to physicians to fund supposedly "independent" research on Integrilin. These details support Relator's allegation that Defendants have paid kickbacks to induce physicians to prescribe Defendants' drugs more often and to reward those physicians who were considered high-volume and influence prescribers. Defendants tracked the return on investment of paid travel and expensive meals and other incentives for physicians. Defendants selected the recipients of these awards and benefits based upon the recipients' quantity of Integrilin and Avelox prescriptions and recipients' influence with other doctors who would also increase prescription rates. The federal Health and Human Services Office of the Inspector General has confirmed that paid meals and other benefits provided to physicians are

---

[1] Relator is opposing both Schering-Merck's and Millennium's motions in this brief because they are substantially similar, and because Relator alleges they are jointly and severally liable for their submission of false claims. Relator notes the points raised by Defendants that differ or where not all Defendants are implicated.

inappropriate if they are meant to directly or indirectly induce business. *See, e.g.*, 68 F.R. 23738. ("these arrangements [entertainment, recreation, travel, meals, etc.] potentially implicate the anti-kickback statute if any one purpose of the arrangement is to generate business.")

In addition to violating the Medicare and Medicaid Anti-Kickback Laws, Defendants also promoted off-label use of Integrilin that was not medically accepted. Defendants specifically promoted the off-label use of Integrilin for STEMI patients before undergoing PCI and to treat cardiovascular problems that were not those approved by the FDA. Mr. Solis pleads based on his personal information and knowledge that Defendants trained their representatives to induce physicians to ask about off-label uses of Integrilin and to provide off-label information to physicians who did not request it. Prescriptions written for these off-label uses were ineligible for reimbursement and were therefore false when they were submitted to the government.

Relator pleads facts that show Defendants knowingly caused doctors and hospitals to submit false claims for payment. *See* discussion *infra* Part III.B.2. Relator pleads that Defendants trained their employees to give doctors unsolicited information about off-label use at specific conferences and phone calls. SAC ¶¶ 56 & 60. He further pleads that specific doctors received kickbacks from Defendants in exchange for prescribing Integrilin and Avelox, and he pleads the dates and details of these kickbacks. SAC ¶¶ 107-15, 117, 123, 125-29. When doctors submitted those prescriptions for reimbursement, their claims were false because Defendants' illegal activities had influenced them. SAC ¶¶ 22-23. Relator pleads facts about Defendants' actions that create a highly plausible inference of fraud under the False Claims Act. The particularity of Relator's allegations exceeds the particularity required by Rule 9(b) and Rule 12(b)(6), so the Court should deny Defendants' Motions to Dismiss.

## II. SUMMARY OF RELATOR'S ALLEGATIONS

Relator Frank Solis has worked in pharmaceutical sales since February 1998. SAC ¶ 28. From July 2003 to about September 2005, Mr. Solis worked as a Sales Representative in Los Angeles for Millennium, promoting the cardiovascular prescription drug Integrilin. *Id.* After Schering acquired exclusive U.S. marketing rights for Integrilin from Millennium, Mr. Solis worked for Schering. *Id.* Mr. Solis participated in regular company training events, including

national and regional sales training conferences, where he interacted with Millennium and Schering's marketing executives and managers. *Id.* Mr. Solis's primary duties at Schering and Millennium were as a Hospital Sales Specialist/Medical Center Sales Specialist, promoting Integrilin. *Id.* While with Schering, Mr. Solis also promoted Avelox. *Id.* In November 2009, after Schering merged with Merck & Co., Mr. Solis became a Merck employee. *Id.*

Defendants Schering and Merck are pharmaceutical companies that produce, market, sell, and distribute products in the areas of cardiovascular disease, immunology, and infectious disease. SAC ¶ 2. Schering, Merck, and Millennium have all promoted the prescription drug Integrilin, or eptifibatide, in the United States. *Id.* Schering and Merck also market, sell, and distribute the antibiotic drug Avelox. *Id.*

Mr. Solis contends that Defendants conspired to fraudulently promote off-label uses for Integrilin. SAC ¶¶ 157&163. This illegal off-label promotion caused physicians to prescribe the drugs off-label and then submit false claims to Medicare, Medicaid, and TRICARE, which the government reimbursed without knowing that the claims were ineligible for reimbursement. SAC ¶¶ 40, 44 & 45. The FDA-approved label states that Integrilin is approved for use in patients (1) suffering from ACS (UA/NSTEMI) and (2) for patients undergoing PCI. *See* SAC Ex. 3 p. 3. Integrilin is not approved for STEMI patients before they undergo PCI. The FDA specifically recommends that this drug be given "as soon as possible *following* the diagnosis,"(emphasis added) not before a diagnosis has been made. *Id*. In their off-label marketing, Defendants promoted "upstream" or "early use" of Integrilin in STEMI patients, which means the drug is given before a diagnosis is made, before PCI is indicated, or before the patient is transferred for PCI. SAC ¶ 5. This is also known as "Facilitated PCI" and does not comply with the FDA-recommended uses for Integrilin or the medically-accepted uses described in the medical compendia. SAC ¶ 39. Additionally, to increase the sales of Integrilin and Avelox, Defendants conspired with and gave kickbacks to physicians in the form of vacations, lavish meals, speaker fees, and research grants to prescribe these drugs more often and for off-label uses. SAC ¶¶ 104; 106-116.

When Defendants promoted off-label uses for Integrilin and provided kickbacks to

physicians to boost sales of Integrilin and Avelox, they knew that these actions would cause hospitals to submit false claims to Medicare, Medicaid, and TRICARE. SAC ¶ 105. Defendants tracked hospitals by their volume of Medicare cardiology patients, the average length of stay for those patients, and the average amount charged. SAC ¶¶ 118-20. Then Defendants targeted those hospitals for kickbacks and off-label promotion. SAC ¶ 120. Defendants knew that Medicare reimbursed the hospitals for the Integrilin, and that kickbacks and off-label promotion were illegal, yet they still committed illegal actions to increase the sale of Integrilin and Avelox and collect the reimbursement money from the government. SAC ¶105.

## III. ARGUMENT

### A. **Legal Standard**

In ruling on a 12(b)(6) motion, the Court must decide if the well-pleaded facts, accepted as true, "state a claim for relief that is plausible on its face." (*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In False Claims Act actions, Rule 9(b) also applies. *U.S. ex rel. Bly–Magee v. Calif.,* 236 F.3d 1014, 1018 (9th Cir.2001). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). To comply with Rule 9(b), allegations of fraud must state the "who, what, when, where, and how of the misconduct." *See Yess v. Ciba–Geigly Corp.,* 317 F.3d 1097, 1106 (9th Cir.2003). In the Ninth Circuit, "it is sufficient to allege 'particular' details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Ebeid v. Lungwitz,* 616 F.3d 993, 998–99 (9th Cir.2010). This standard has been met here. Relator alleges with particularity the Defendants' fraudulent series of actions that constitute violations of the FCA.

### B. **Relator Pleads All the Elements of an FCA Claim With Particularity.**

In *Hendow v. University of Phoenix*, the Ninth Circuit laid out four elements of a false certification claim: (1) a false statement or fraudulent course of conduct; (2) made knowingly; (3) causing; (4) the government to pay out money. *Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). Under this framework, an FCA claim "can be based on the allegation that a

party has falsely certified compliance with a statute or regulation as a condition to government payment." *Id.* at 1168. As described below, Relator alleges that Defendants' actions satisfy each element of the *Hendow* framework.

### 1. Defendants Fraudulently Increased the Number of False Claims.

Relator pleads specific facts describing the two main ways Defendants acted fraudulently: by paying kickbacks, and by improperly marketing their drugs. These actions caused the government to reimburse false claims.

A claim is "materially false or fraudulent" if it "represent[s] compliance with a material condition of payment that was not in fact met." *United States ex rel. Hutcheson v. Blackstone Med. Inc.,* 647 F.3d 377, 379 (1st Cir.2011). Here, Relator alleges Defendants paid kickbacks to doctors, violating federal and state anti-kickback laws. Relator further alleges Defendants promoted off-label use of their drugs, violating the Food Drug and Cosmetic Act. *See* 21 U.S.C. §§ 301 *et seq.* Claims influenced by these efforts were false because they effectively ask the government to pay for illegal activity. Relator details in the SAC how Defendants targeted hospitals with a high volume of Medicare patients, paid for physicians' meals, gave grants to the attending cardiologists, and brought in speakers to talk about the off-label uses of Integrilin and Avelox, all with the goal of increasing prescriptions of those drugs.

### a. Defendants Gave Kickbacks to Reward Doctors For Prescribing Integrilin and Avelox.

The Medicare and Medicaid anti-kickback laws, and similar state statutes prohibit pharmaceutical manufacturers from providing kickbacks to physicians and medical care providers. *See, e.g.,* 42 U.S.C. 1320a-7b(b)(2)(B). Claims influenced by kickbacks are false because "courts, without exception, agree that compliance with the Anti–Kickback Statute is a precondition of Medicare payment, such that liability under the False Claims Act can be predicated on a violation of the Anti–Kickback Statute." *U.S. ex rel. Westmoreland v. Amgen, Inc.,* 812 F.Supp.2d 39, 54 (D.Mass. 2010); *See, e.g., U.S. ex rel.Wilkins v. United Health Group, Inc.,* 659 F.3d 295, 313 (3rd Cir. 2011) ("Compliance with the [Anti–Kickback Statute] is clearly a condition of payment under Parts C and D of Medicare and appellees do not refer us to any

judicial precedent holding otherwise. In fact, the precedents hold the opposite."); *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir.2009) ("Falsely certifying compliance with the ... Anti–Kickback Act[ ] in connection with a claim submitted to a federally funded insurance program is actionable under the [False Claims Act].").

Defendants rewarded high prescribing doctors with kickbacks in various forms, including: expensive meals; speaking engagements to promote Integrilin; funding for research or hiring them to research Integrilin. In the SAC, Mr. Solis describes fourteen separate and specific meals paid for by Defendants as kickbacks to doctors for prescribing Integrilin and Avelox. SAC ¶¶ 107-15, 117, 123, 125-29. Defendants paid for meals when doctors demanded it in exchange for prescriptions. SAC ¶ 102. Defendants also rewarded high-prescribing doctors with speaker fees. SAC ¶¶ 83-86, 122. Defendant Schering even talked about sending Dr. Lee to Hawaii because he was "instrumental at driving existing sales." SAC ¶ 68. While Defendants paid doctors to give talks, the speaking part of the engagement was a negligible obligation. Defendants provided doctors with the slides for these talks, and sometimes the doctors simply left a laptop open with the presentation slides showing, while having dinner with guests on Defendants' tab. SAC ¶¶ 82 & 133. In another instance, Defendant Schering even paid a doctor a "speaker fee" for a dinner party the doctor was hosting for his lab staff at his own home. SAC ¶ 84. In the SAC, Relator specifically alleges the names, dates, costs, and locations for the described kickbacks.

Mr. Solis also alleges that Defendants knowingly targeted hospitals with a high volume of Medicare patients for strategic kickbacks to increase prescriptions. For example, in a 2006 business plan for Glendale Memorial Hospital, Schering tracked 787 cardiology Medicare in-patients, a 4.7-day average length of stay, and a $30,565 average charge per patient. In order to increase the amount of Medicare business from the facility, Schering targeted attending cardiologist Dr. Don Lee to receive a $5,000 grant to support his cardiology seminar in Las Vegas. SAC ¶ 120. In a 2007 business plan for Glendale Adventist Hospital, Schering instructed Mr. Solis to increase Integrilin sales to $260,000 by training high prescribing doctor Harry Balian as a speaker, and scheduling him to be paid $1,500 for separate speaking engagements. SAC ¶ 122.

Relator's detailed allegations fairly notify Defendants of his allegations about their use of illegal kickbacks to increase profits. These claims meet the pleading requirement of Rule 9(b), so the Court should deny Defendants' Motions to Dismiss.

**b. Defendants Improperly Marketed Integrilin.**

Defendants promoted the dangerous off-label use of Integrilin. Due to the health risk involved in unapproved use, it is illegal to promote drugs for any uses other than those approved by the FDA. Integrilin has a limited scope of use, so Defendants sought to increase unapproved, upstream use of Integrilin in order to increase prescription rates.

Any failure to fairly and accurately represent the required information about a prescription drug is considered misbranding and is a false and fraudulent statement as a matter of law. *See* 21 U.S.C. §§331(a) and (b), 352(a), (f), and (n); 21 C.F.R. §201.57. Relator pleads facts that show Defendants systematically worked to convince doctors to prescribe Integrilin off-label. These off-label prescriptions were more expensive than approved prescriptions for similar use, and did not yield improved outcomes. In fact, a 2009 study published in the New England Journal of Medicine showed that off-label use of Integrilin was associated with an increased risk of bleeding and need for transfusion. SAC ¶ 61.

First, Defendants paid doctors to promote off-label use of Integrilin. SAC ¶¶ 6, 7, 64, 67-73. Thus, the above-mentioned speaker fees served as one part of Defendants' improper marketing scheme. *Id.* The doctors who received speaker fees, meals, and vacations from Defendants effectively became salesmen for off-label use of Integrilin. *Id.*

Second, Defendants trained their sales representatives to provoke doctors and nurses to ask about off-label use of Integrilin. SAC ¶¶ 56 & 60. Once the doctors asked about off-label use, Defendants provided them with materials designed to make off-label use seem safe, including medical studies that have been discredited. SAC ¶¶ 58-61. These facts demonstrate that Defendants illegally promoted off-label use of Integrilin.

**2. Defendants Knew Their Actions Were Fraudulent.**

Relator pleads that Defendants knew their actions were fraudulent and actively worked to

7

conceal it. A defendant is liable under the FCA if it

> "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] (C) conspires to commit a violation of subparagraph (A), (B)…"

31 U.S.C. § 3729 (a)(1)(A)-(C). A defendant "knowingly" does something if that defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). Proof of the specific intent to defraud is not required to prove knowledge. *Id*. Mr. Solis pleads that Defendants knowingly undertook their fraudulent course of conduct. Specifically, Mr. Solis alleges that Defendants planned to induce doctors to increase off-label prescriptions, and trained their sales representatives in conversational tactics to elicit questions about off-label use. SAC ¶¶ 56 & 60. Sales representatives learned how to initiate these exchanges at biannual company conferences and on training phone calls. SAC ¶ 56. These regularly scheduled strategic trainings demonstrate the Defendants knew, and intended their fraudulent marketing scheme—improper off-label conversations with doctors were not the isolated work of one or two sales representatives, they were an institutional procedure that all sales staff were trained to follow. This tactic was an attempt to conceal illegal promotion and work around the law. Defendants can technically provide off-label information when asked, so they trained their sales staff to provoke questions about off-label use.

Not only did Defendants plan and train their employees on how to promote off-label use, they also tracked sales representatives' effectiveness at increasing off-label use. SAC ¶134. Defendants wrote internal guidelines for, and had business plans to promote off-label use. SAC ¶101. Mr. Solis has pleaded that he received coaching and feedback on his performance in increasing off-label use. SAC ¶¶ 70 & 124.

In order to increase sales of Integrilin and/or Avelox, Defendants illegally paid kickbacks to doctors who were willing to prescribe the drugs. SAC ¶ 14. Defendants trained and instructed sales representatives, business and marketing managers, and other employees to offer doctors

cash payments, expensive trips and meals, and entertainment as kickbacks in exchange for the doctors agreements to prescribe Integrilin and/or Avelox. *Id.*  In other words, Defendants knew exactly what they were doing.

Furthermore, Defendants knew they were acting illegally and tried to conceal their actions by funneling some payments through third-party organizations to doctors. SAC ¶103. Defendant Schering made payments to doctors through the Advanced Health Media marketing company. SAC ¶131. For example, Schering contracted with Advanced Health Media to pay a $1,500 speaker fee for Dr. Harry Balian to speak at Glendale Memorial Hospital on "Treatment Strategies in PCI," a main area of targeted off-label marketing for Defendants. SAC ¶¶ 132. The facts that Mr. Solis alleges exceed the particularity requirement for knowledge under Rule 9(b), so the Court should deny Defendants' Motions to Dismiss.

### 3. Defendants' Fraudulent Conduct Caused Doctors and Hospitals to Submit False Claims.

Defendants' fraudulent course of conduct foreseeably caused doctors and hospitals to submit false claims. "The FCA does not provide a special definition for causation… Absent an FCA-specific definition of causation the Court will apply common-law tort causation concepts." *U.S. ex. rel. Franklin v. Parke-Davis*, 2003 U.S. Dist. LEXIS 15754 at *12 (2003 D. Mass.). Defendants can easily foresee false claims being filed as a result of their illegal promotional activities and marketing. *Id.* at 13.

In *U.S. ex rel. Hutcheson v. Blackstone Medical, Inc.*, the Relator proved her implied false certification claim using an excerpt of the standard Provider Agreement that each hospital and physician must sign in order to receive reimbursement from Medicare. *U.S. ex rel. Hutcheson v. Blackstone Medical, Inc.*, 647 F.3d 377 (1st Cir. 2011). It stated,

> "I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the compliance with all applicable conditions of participation in Medicare."

*Id.* at 381. Every hospital must sign a form similar to this when applying for enrollment into the

Medicare program. Even though the hospitals' reimbursement forms do not contain a certification, it is implied that the claims for reimbursement comply with the certification made in the Medicare enrollment application. This means that every hospital that had a physician that prescribed Integrilin or Avelox based on a kickback provided by Defendants, or prescribed Integrilin as a result of off-label promotion, submitted a false claim.

When Integrilin is prescribed for an off-label use in an inpatient procedure, Medicare reimburses that claim be based on the diagnosis, not the drugs used. 42 U.S.C. §1395ww(d). In inpatient cases, Mr. Solis contends that Defendants' kickbacks to physicians caused hospitals to submit false certifications that were material to the government's decision to reimburse the claims because if the government had known that the prescriptions were made or effected by kickbacks and that the Federal Anti-Kickback Statute had been violated, the claims would not have been reimbursed. This claim follows the theory of implied false certification, which was described by the Ninth Circuit as "when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Ebeid v. Lungwitz*, 616 F. 3d 993, 998 (9th Cir. 2010).

An FCA claim based on illegal kickbacks must only show that one purpose of the kickbacks is to induce Medicare or Medicaid claims – the claims need not be the sole purpose of the kickbacks. *U.S. v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000). Mr. Solis alleges facts that show that at least one purpose of the kickbacks Defendants paid was to increase Medicare and Medicaid prescriptions of Integrilin and Avelox. An analysis by SDI Health LLC of Plymouth Meeting, Pennsylvania, which surveyed six hundred hospitals nationwide for Integrilin use by indication between January 2006 and December 2009, found that treatment of STEMI patients with Integrilin averaged 66% of the total number of NSTEMI patients treated with Integrilin. SAC ¶¶148-149 & Ex. 55. Accordingly, for every one hundred FDA-approved uses of Integrilin on NSTEMI patients, there are sixty-six FDA unapproved uses on STEMI patients. Additionally, the survey found that outpatient use of Integrilin was 10% of the inpatient use in 2006, and rose to approximately 30% of inpatient Integrilin use by 2009. SAC ¶ 148. Mr. Solis

has pleaded that off-label marketing of Integrilin and kickbacks provided to physicians boosted sales as indicated in this study; the approved use of Integrilin under the FDA had not changed during this period, and there were virtually no off-label uses that were approved by the medical compendium at that time. SAC ¶ 39.  This is exactly the kind of statistical sampling that "satisf[ies] Rule 9(b) by providing factual or statistical evidence to strengthen the inference of fraud beyond possibility without necessarily providing details as to each false claim." *Duxbury v. Ortho Biotech Products, L.P.*, 579 F.3d 13, 19 (1st Cir. 2009) (citations omitted).

Defendants argue that the off-label use of Integrilin could have risen because of ACC/AHA Guidelines, which were 1) supposedly promoting the early treatment of UA and NSTEMI patients with Integrilin, and 2) and approving Integrilin for treatment of STEMI patients undergoing PCI, and 3) use of Integrilin in connection with facilitated PCI. This is a factual dispute, however, because the SAC contends that the compendia, including the guidelines, do not endorse this use of Integrilin. SAC ¶ 39. As this is a motion to dismiss, Relator's version of the facts should prevail, because for the purposes of a motion to dismiss, the facts in the complaint should be taken as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In addition, the SAC specifically alleges that the defendants' illegal promotional activity caused false claims to be made. SAC ¶¶ 22, 44, 103, 152, 157. The law requires only a showing that the Defendants' wrongful conduct, in this case the off-label promotion of the Integrilin, and the kickbacks provided to doctors to promote Integrilin and Avelox, be a substantial factor in the submission of a false claim. *U.S. ex. rel. Franklin v. Parke-Davis*, 2003 U.S. Dist. LEXIS 15754 at *12 (2003 D. Mass.). Those allegations are plainly made in the complaint. SAC ¶¶ 22, 44, 103, 152, 157.

Mr. Solis alleges facts sufficient to plead that Defendants' wrongful actions were a substantial factor in the submission of false claims for reimbursement to Medicare, Medicaid, and TRICARE. For example, after Schering paid for lunch for Clinical Pharmacist Romic Eskandarian of Glendale Adventist Hospital, Eskandarian committed to buying a large amount of Integrilin prior to the 2008 Christmas holiday. SAC ¶117. Again in December of 2008, Schering representatives met with Clinical Pharmacist Romic Eskandarian and Dr. Fred Abrahamian and bought them an expensive dinner hoping to get Avelox on the formulary for Glendale Adventist

Hospital to boost sales. SAC ¶¶135 & 136. Glendale Adventist Hospital added Avelox to the formulary shortly thereafter. *Id*. Schering's Hospital Project Action Plan dated January 27, 2009, indicates that after buying lunch for Dr. Keushkerian's office, the doctor promised to write additional prescriptions of Avelox and to try to get the pharmacy to carry more. SAC ¶137. These examples demonstrate that Defendants' fraudulent kickbacks succeeded at increasing sales of Integrilin and Avelox.

### 4. The Government Reimbursed Defendants' False Claims.

Mr. Solis alleges that the government paid reimbursements under Medicare, Medicaid and TRICARE to hospitals where Defendants had promoted off-label use of Integrilin, and where Defendants had paid kickbacks to the prescribing doctors.  Mr. Solis's allegations are sufficient because "[all] that matters is whether the false statement or course of conduct causes the government to pay out money or to forfeit moneys due." *Maa v. Ostroff*, 2013 U.S. Dist. LEXIS 57433 at 60 (citing *Hendow*, 461 F.3d 1166, 1177).

Defendants' fraudulent efforts successfully increased the number of prescriptions for Integrilin and Avelox at hospitals with a high volume of Medicare and Medicaid patients. Defendants often specifically targeted high Medicare- and Medicaid-prescribing doctors in order to increase market share of Integrilin and Avelox within those programs. SAC ¶ 116. As a result, inpatient prescriptions increased dramatically from 2007-2008, and outpatient prescriptions approached 30% by the end of 2009. SAC ¶ 148. The increase in outpatient use of Integrilin is entirely attributable to an increase in patients receiving Integrilin for off-label use, which was Defendants' goal. SAC ¶ 148.  In total, the information Mr. Solis has provided shows an estimated $400,000,000 paid overall for off-label use of Integrilin in the last ten years. SAC ¶ 150. Relator alleges that the government paid a portion of that sum as reimbursements for false certifications submitted to Medicare, Medicaid and TRICARE.

The dramatic increase in Integrilin prescriptions at hospitals with a large number of Medicare and Medicaid patients that Defendants specifically targeted creates a highly plausible inference that the government reimbursed claims that were the direct result of kickbacks, or were influenced by improper marketing.

C. **Relator Alleges a Viable False Claims Act Violation Predicated on the Anti-Kickback Statute.**

A violation of the anti-kickback statute requires a showing of four elements: (1) knowingly and willfully, (2) offering or paying remuneration, (3) to induce another to purchase or order a good or service, (4) for which payment may be made by a federal healthcare program. 42 U.S.C. §1320a-7b(b)(2)(B).

Mr. Solis has detailed in the SAC how Defendants willfully and knowingly targeted hospitals with a high volume of Medicare patients and paid for physicians' meals. SAC ¶¶ 120-22. Examples of remuneration as given in the statute include kickbacks, bribes, and rebates. §1320a-7b(b)(1). "Kickback may refer not only to a return of a part of a sum received ... but also to the forwarding of a sum to a third party for services performed for the payor of the kickback by the third party payee (though the payee may not originally have given payor any payment)." *United States v. Weingarden*, 486. F.Supp. 410, 412 -413 (E.D. Mich. 1979). Defendants gave grants and brought in speakers to talk about the off-label uses of Integrilin in order to get the physicians to increase their prescriptions. SAC ¶¶ 121-22. Defendants rewarded high-prescribing physicians with expensive meals, hired them as speakers, and provided money for their research. SAC ¶¶ 100-103; 123-130. These payments were clearly for services performed for the Defendants. A person who offers or pays remuneration to another person violates the Act so long as one purpose of the offer or payment is to induce Medicare or Medicaid patient referrals. *U.S. v. McClatchey,* 217 F.3d 823, 835 (10th Cir. 2000). These kickbacks induced higher prescriptions and rewarded high volume physicians. Defendants' conduct foreseeably caused submissions to Medicare for reimbursement of Integrilin prescriptions that were ineligible for reimbursement, violating anti-kickback statutes.

D. **Relator's Claims Do Not Implicate the First Amendment.**

Defendants Schering and Merck argue that Relator's claims about Defendants' off-label marketing using medical studies implicate the First Amendment. Dkt. 113-1 at 15. This argument does not accurately reflect the law, because the FCA provides an independent basis for liability for false claims. 31 U.S.C. § 3729(a)(1)(A). Furthermore, even if the medical studies were true,

13

they can be evidence of Defendants' off-label promotion. *See Wisconsin v. Mitchell*, 508 U.S. 476, 488-89 (1993) ("The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.")

### E. Relator Has Adequately Pleaded The State Law Claims, Which Are Not Barred.

Defendants raise various objections to Relator's state law claims. None of them have any merit.

### 1. No Applicable Statute of Limitations Bars Relator's Claims.

As recently affirmed by the Fourth Circuit in *United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171 (4th Cir. 2013), the Wartime Suspension of Limitations Act (18 U.S.C. 3287) applies to non-intervened False Claims Act cases like this one.  Because the wartime hostilities have not ceased, the six-year False Claims Act statute of limitations will continue to be tolled until "5 years after the termination of hostilities as proclaimed by Presidential proclamation…or resolution of Congress." *Carter*, 710 F.3d at 177-178 (quoting 18 U.S.C. 3287).  No such proclamation or resolution has issued to date, so, accordingly, the statute of limitations as to Relator's FCA claims remains tolled.

Furthermore, Defendants argue that all claims brought before November 4, 2003 are barred in California, Nevada, District of Columbia, Florida, Massachusetts, Hawaii, Louisiana, Illinois, Tennessee, and Virginia. All of the states listed above have statutes that mirror the FCA, which allows an action to be brought no more than 10 years after the date on which the violation was committed. In all of these states, with the exception of Washington D.C., if the complaint qualifies for the 10 year look-back under federal law then it should satisfy the state law as well. There is an exception in D.C., which only has a nine-year look-back. D.C. Code § 2-381.05. In that district the complaint can only reach back to actions that occurred in November of 2000. The only other variation from the FCA is in Louisiana. The Louisiana Revised Statute § 46:439.4(D) limits the recovery allowed for a relator who planned and initiated the fraud against the government. Relator here did not, so the limitation does not apply.

### 2. Invoked Statute Did Not Exist At Time In Question.

The states where the statute for the state equivalent of the FCA was not in place until after a portion of the false claims occurred are Montana, Georgia, Indiana, New Jersey, New York, Oklahoma, Rhode Island, Connecticut, Maryland, Minnesota, North Carolina, and Washington. In most of these states (Montana, Georgia, Indiana, New Jersey, New York, Oklahoma, Rhode Island, Connecticut, Minnesota, Washington, and North Carolina), the law does not expressly state whether or not the false claims act of that particular state is retroactive to claims made before the effective date of the statute. Georgia, Minnesota, and Montana have clauses in their constitution or code that state that retroactive clauses are not allowed or that they are not allowed unless expressly stated. Ga. Const. Art I, § I, Para. X; Minn. Stat. § 645.21; Mon. Code Ann. § 1-2-109. In those states only laws that affect or impair rights that have been vested cannot be retroactive. *Armistead v. Cherokee County School District*, 144 Ga. App. 178, 197 (1977). Most of the courts of the above-mentioned states have left whether a law is retroactive or not up to statutory construction principles and whether making the statute retroactive would impair a vested right. *See Milbradt v. Margaris*, 693 P.2d 78, 81 (Wash. 1985). While the language of the various statutes seems void of any intention to make it retroactive or not, Defendants' vested rights would not be impaired if the prospective states' false claims acts were made retrospective. As the Georgia Court of Appeals puts it in *Walker v. State*, 132 Ga. App. 274, 277-278 (1974) "There is no such thing as a vested right to do wrong."

In Maryland, the Defendants' contention that the False Claims Act statutes are not retroactive is simply not correct. Maryland Health-General Code Annotated Section 2-609(b) specifically states, "[a] civil action may be filed under this subtitle for activity that occurred prior to October 1, 2010, if the limitations period under subsection (a) of this section has not lapsed." The limitations in subsection (a) mirror those in the FCA, therefore, if the federal claim is eligible for the ten-year look back, then the state claim in Maryland should be also.

### 3. Defendants' Personal Jurisdiction Defense Fails.

Defendants Schering and Merck try to raise a personal jurisdiction issue that has no merit.

Dkt. 113-1 at 20. This defense fails for two reasons. First, Defendants waived the personal jurisdiction defense when they failed to raise it in their first Motion to Dismiss. Fed. R. Civ. P. 12(g)(2).

Second, Defendants cite a completely inapposite case dealing with a foreign-based corporation to suggest that they, as domestic companies, could not be haled into court in California, a state where they do extensive business. *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). The plaintiffs in *Daimler* were Argentinian citizens suing Daimler, the parent company of Mercedes-Benz, in California under a theory of general personal jurisdiction. *Id.* at 750. The issue was Mercedes-Benz Argentina's involvement in an Argentinian war. *Id.* at 750-51. Due to the "absence of any California connection" to the plaintiffs, their injuries, or the defendants, the Court found the exercise of personal jurisdiction in that case to be "exorbitant." *Id.* at 751.

In the Motion to Dismiss, Defendants attempt to broadly construe *Daimler* to suggest that it applies to any and all defendants, including domestic corporations. In fact, *Daimler* only applies to foreign corporations attempted sued for conduct taking place in a foreign country in the limited context of general jurisdiction. Here, Defendants are domestic corporations, and the majority of the facts alleged took place in California, so Defendants are clearly subject to specific personal jurisdiction in California. Even if Defendants were not subject to specific jurisdiction in California, they would still be subject to general jurisdiction in the state due to their substantial and unquestioned "continuous corporate operations" here. *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945).

### 4. **There Is A Private Right Of Action In Colorado, New Hampshire, Maryland, and Texas.**

Defendant Millennium generally alleges that all claims are barred in Colorado, New Hampshire, Maryland, and Texas because these states' false claims acts do not allow a private right of action. Dkt. 116 at 16. However, the statutes and cases they cite do not support this proposition. The Colorado Revised Statutes, Section 25.5-4-306(2)(a) and (3)(c), specifically give a private citizen the right to bring a qui tam action in the name of the relator and the state. As of June 29, 2009 the New Hampshire statute permits relators to pursue claims without state

intervention. *See* N.H.Rev.Stat. Ann. § 167:61–c(II)(e) (Supp. 2011). The cases Defendant cites have been vacated, or Circuit courts have declined to extend their logic.

Millennium argues that the SAC violates service and sealing requirements in 6 states. Dkt. 116 at 17. However, this action has been unsealed by court order since December 20, 2012, so those requirements do not and cannot apply.

Millennium argues that Connecticut and Maryland require *qui tam* claims under their state laws to be brought in those states. Dkt. 116 at 17. This mischaracterizes the law. Both the Connecticut and Maryland statutes allow that a relator "may" bring suit in the state, not that a relator *must* bring suit in the state. Conn. Gen. Stat. § 17b-301d(b); Md. Code Health-Gen. §2-604(a)(1)(i).

Millennium argues that in Michigan drug manufacturers are immune from liability under state FCA law for sales of FDA-approved drugs. Dkt. 116 at 17. While Michigan has a unique immunity statute, the case Millennium cites holds only that when "the drug in question was approved by the FDA, the state's suit to recover Medicaid money premised on fraud by the drug company in its representations regarding the safety and efficacy of the drug is barred" by Michigan statute. *Attorney Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343, 344 (Mich. Ct. App. 2011); MCL 600.2946(5). There, the Attorney General sought to pursue a products liability claim under the state FCA, as a way to work around the immunity statute. *Merck Sharp*, 807 N.W.2d at 344. The case and the statute do not grant immunity to drug manufacturers for paying kickbacks or for illegal marketing of off-label use. *See id.*; MCL 600.2946(5).

Millennium argues that Relator's claims under Texas law are time barred. Dkt. 116 at 17. However, as Millennium concedes, Texas argued to the contrary in the last round of briefing in this case.

**IV. CONCLUSION**

As described above, Mr. Solis has made his allegations in greater detail than required by the False Claims Act and Rules 12(b)(6) and 9(b). For the reasons stated above, Mr. Solis respectfully requests that the Court deny Defendants' motion to dismiss, or grant such other relief as the Court deems just and proper, including the opportunity to amend after the Court rules on

1   the 12(b)(6) and 9(b) issues that have not previously been addressed by the Court.

2

3

4                                        Respectfully submitted,

5   Dated:  June 4, 2014                 KERSHAW CUTTER & RATINOFF, LLP

6
                                         By: ___*/s/ John R. Parker, Jr.*_____
7                                            C. Brooks Cutter
                                             John R. Parker Jr.
8                                            401 Watt Avenue
                                             Sacramento, CA 95864
9                                            Tel.: 916.448.9800/Fax: 916.669.4499

10

11                                           Mychal Wilson
                                             THE LAW OFFICE OF
12                                           MYCHAL WILSON
                                             The Water Garden
13                                           2425 Olympic Blvd., Suite 4000-W
                                             Santa Monica, CA 90404
14                                           Tel.: 424.252.4232/Fax: 310.424.7116

15

16                                           *Attorneys for Relator Frank Solis*

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTIONS TO DISMISS

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on June 4, 2014, I caused a copy of the foregoing document to be

3   filed electronically via the Court's electronic filing system. Those attorneys who are registered

4   with the Court's electronic filing system may access these filings through the Court's system, and

5   notice of these filings will be sent to these parties by operation of the Court's electronic filing

6   system.

7

8                      By: */s/John R. Parker, Jr.*        
                       John R. Parker, Jr.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTIONS TO DISMISS