1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA, ex rel.        No.  2:09-cv-03010-MCE-EFB
     FRANK SOLIS,
12
              Plaintiffs,
13                                            **MEMORANDUM AND ORDER**
              v.
14
     MILLENNIUM PHARMACEUTICALS,
15   INC., SCHERING-PLOUGH CORP.,
     and MERCK & CO.,
16
              Defendants.
17

18

19          This lawsuit was originally filed under seal on November 4, 2009, pursuant to the

20   qui tam provisions of the Federal False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA"),

21   against  Defendants, who are pharmaceutical companies, include Millennium

22   Pharmaceuticals, Inc., Schering-Plough Corp., and Merck and Co. ("Defendants" unless

23   otherwise indicated).  The so-called "Relator" Plaintiff, Frank Solis, a former sales

24   employee who at various points worked for all three Defendants ("Relator" or "Plaintiff")

25   claims that the companies fraudulently marketed and/or promoted the use of two drugs,

26   Integrilin and Avelox, for so called "off label" uses not approved by the Food and Drug

27   Administration.[1]  In so doing, according to Relator, Defendants "caused" physicians to

28   ───────────────────
              [1] Off label use of a drug occurs when it is used either for a purpose not approved by the FDA, of

                                               1

1  improperly prescribe the drugs and, consequently, to submit false claims to Medicare,

2  Medicaid and TRICARE (United States Military Healthcare) for federal reimbursement,

3  which the government allegedly paid without knowing the claims were ineligible.

4  Following a three-year investigation, the United States and all twenty-four states named

5  in the initial complaint chose not to intervene, and Relator's Complaint was subsequently

6  unsealed on December 20, 2012.

7         In response to Motions to Dismiss previously filed on behalf of each of the

8  Defendants, Relator filed a First Amended Complaint ("FAC") on June 27, 2013.  The

9  viability of Plaintiff's FAC was then also attacked through three separate motions.

10  Defendants Schering-Plough Corp.  ("Schering-Plough")  and Merck & Co. ("Merck") filed

11  a joint Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil

12  Procedure 12(b)(1)[2] on grounds that Relator's complaint was barred by the FCA's so

13  called "public disclosure" bar.  Defendant Millenium Pharmaceuticals, Inc. ("Millenium")

14  subsequently joined in that motion.  Additionally, two other motions, one filed jointly by

15  Schering-Plough and Merck and the other by Millenium, argued that the various causes

16  of action pled in the FAC are substantively deficient in contravention of Rule 12(b)(6).

17  By Memorandum and Order filed March 26, 2014, this Court granted  Defendants' Rule

18  12(b)(1) motion on grounds that Relator's "combination use" allegations were precluded

19  under the FCA's s-called "public disclosure" bar precluding suits whose allegations have

20  already been disclosed.  Because Relator's FAC contained other allegations beyond

21  combination use, however, including assertions pertaining to a completely different drug,

22  Avelox, as well as allegations of fraud, improper billing, and impermissible kickbacks, the

23  Court permitted Relator to file a Second Amended Complaint ("SAC") omitting the

24  combination use allegations.[3]

25  _____

where non-indicated dosing regimens for the drug are promoted.

26          [2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
noted otherwise.

27

28          [3] Because the Rule 12(b)(6) motions challenged the sufficiency of the FAC's allegations at a point
when the question of the Court's jurisdiction over this qui tam action had not yet been determined, and

1    Relator's SAC was filed on April 5, 2014, and that amended pleading is the

2    subject of yet another motion, this time offered by Defendant Millenium alone, that

3    challenges the court's jurisdiction under Rule 12(b)(1) as to any claims asserted against

4    Millenium.  As set forth below, that Motion is GRANTED.  Because the Court concludes

5    that it has no jurisdiction over Relator's claims against Millenium in this matter,

6    Millenium's concurrently filed Motions to Dismiss under Rule 12(b)(6), and to strike under

7    Rule 12(c), are DENIED as moot.[4]

8

9                                    **BACKGROUND**

10

11    Integrilin is a drug that helps reduce blood clots and thereby helps to prevent

12    heart attacks and death in patients suffering from acute coronary syndrome ("ACS").

13    ACS is an umbrella term covering a variety of diseases related to clotting in the coronary

14    arteries that supply blood to the heart muscle, including unstable angina ("UA"), mild

15    heart attacks known as non-ST–segment elevation myocardial infarctions ("NSTEMI"),

16    and more severe heart attacks called ST-segment elevation myocardial infarctions

17    ("STEMI").  Avelox, on the other hand, is an antibiotic approved by the Food and Drug

18    Administration ("FDA") for treating adult patients with infections caused by a few

19    susceptible strains of microorganisms.[5]

20    ///

21

22    since the parameters of a SAC without the combination use allegations would likely be far different than its
      predecessor, the Court denied those motions without prejudice to being renewed following submission of
23    the SAC.
            [4] Having determined that oral argument would not be of material assistance, the Court ordered this
24    matter submitted on the briefing.  See E.D. Cal. Local Rule 230(g).

25          [5] While Relator contends that Millenium was involved in the promotion of Integrilin between 2002
      and 2005, Millenium had no similar role with respect to Avelox, the other drug implicated by Relator's
26    lawsuit.  The SAC makes it clear that only Schering and Merck were involved in marketing, selling, and
      distributing Avelox.  SAC, ¶ 2.  Consequently, since the "combination use" allegations have already been
27    dismissed, Millenium's role in marketing Integrilin is the only remaining claim against Millenium at this
      juncture of the proceedings, and the only factor that need be considered in determining whether the Court
28    has jurisdiction over Millenium.

                                            3

1    With respect to Integrilin, FDA approval was first obtained in May 1998 by a

2  company named COR Therapeutics, Inc. ("COR"), which thereafter promoted the drug

3  along with Defendant Schering-Plough.  In February of 2002, Defendant Millennium

4  acquired COR and thereby obtained the right to co-promote Integrilin.  In September of

5  2005, Defendant Millennium transferred its right to market Integrilin within the United

6  States to Defendant Schering-Plough, thereby relinquishing any responsibility for the

7  drug after a period of less than four years.  Schering-Plough later merged with Merck in

8  November of 2009 to form a new company, also known as Merck.

9    The allegations incorporated within Relator's initial complaint included contentions

10  that Defendants, including Millenium, facilitated the presentation of false reimbursement

11  claims by doctors and hospitals.  According to Relator, Defendants promoted the

12  prescription of Integrilin in particular, in combination with other drugs, without properly

13  disclosing the dangers implicit in such combinations.  As already stated, those

14  allegations have already been adjudicated in Defendants' previous Rule 12(b)(1) Motion

15  to Dismiss.  Relator's SAC, however, also alleges other allegedly improper uses of

16  Integrilin, including its early use for STEMI patients, despite the fact that such early use

17  is "extremely dangerous, off-label and fraudulent."   SAC, ¶ 5, 11.  Relator further claims

18  that Defendants violated the so-called Anti-Kickback Statute ("AKS"), which prohibits a

19  drug company from knowingly and willfully offering or paying remuneration to purchase

20  goods or services for which payment may be made by a federal healthcare program.

21  See 42 U.S.C. § 1320a-7b(b).  Relator alleges that Defendants violated the AKS by

22  "funnel[ing] millions of dollars" in grants, honoraria, and meals to physicians in order to

23  induce Integrilin prescriptions and to drive "off label" sales, all in violation of the AKS.

24  See SAC, ¶ 6-7, 151-55.

25    Relator Solis was an Integrilin sales representative for Millennium covering the

26  Los Angeles area between July 2003 and September of 2005.  At that time he

27  transitioned to employment for Schering-Plough.  Then, in November of 2009, after the

28  ///

4

1    Schering/Merck merger, he became a Merck sales representative.  Relator was

2    terminated by Merck on March 9, 2010.

3          Plaintiff's SAC alleges causes of action for federal false claims based on the AKS

4    (Counts One and Two), false claims for causing the submission of off-label billings

5    (Count Three and Four), and false claims for the fraudulent promotion of Integrilin (Count

6    Five).  Plaintiff's claims are all rooted in the federal FCA, but additional causes of action

7    based on corresponding state law statutory provisions are also made on behalf of both

8    California (Count Seven)  and 27 other states (Counts Eight through Thirty Four).  While

9    the Second and Fourth Claims are pled against Schering-Plough alone, the remaining

10   claims are asserted against all named Defendants, including Millenium.

11         As indicated above, with respect to Relator's claims that Defendants promoted

12   "combination use" of Integrilin along with other drugs, this Court has already found those

13   allegations to be foreclosed by the FCA's "public disclosure" bar.  Unless a relator can

14   show he qualified as an "original source" of the disclosure, that bar strips courts of

15   jurisdiction over qui tam actions where the allegations or transactions underlying the

16   claimed fraud have already been "publicly disclosed."  31 U.S.C. § 3730(e)(4)(A) (2006).

17   The Court based its finding that the public disclosure bar applied on the fact that key

18   allegations made in Relator's complaint had already disclosed three years before the

19   filing of this action in a state court case filed in South Carolina.

20         Now, through the present motion, Millenium asserts that any remaining claims

21   levied against it were previously disclosed in five separate federal lawsuits filed between

22   February and July of 2007 in Pennsylvania, Massachusetts and Florida.  Those claims

23   include allegations that Millenium schemed and conspired to induce healthcare providers

24   to use Integrilin through activities ranging from the funding of grants, speakers,

25   honoraria, and meals, all designed to promote the drug and encourage the submission

26   of false claims to the government.  Because the previous federal actions identified

27   similar forms of kickbacks, including lavish entertainment, questionable speaker fees or

28   ///

1  honorariums, and phony grants, Millenium claims that Relator's attempt to levy

2  substantially the same allegations in this matter is foreclosed.

3

4  **STANDARD**

5

6      Federal courts are courts of limited jurisdiction, and are presumptively without

7  jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,

8  377 (1994).  The burden of establishing the contrary rests upon the party asserting

9  jurisdiction.  Id.  Because subject matter jurisdiction involves a court's power to hear a

10  case, it can never be forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630

11  (2002).  Accordingly, lack of subject matter jurisdiction may be raised by either party at

12  any point during the litigation, through a motion to dismiss pursuant to Federal Rule of

13  Civil Procedure 12(b)(1).  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l

14  Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009).

15  Lack of subject matter jurisdiction may also be raised by the district court sua sponte.

16  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).  Indeed, "courts have an

17  independent obligation to determine whether subject matter jurisdiction exists, even in

18  the absence of a challenge from any party."  Id.; see Fed. R. Civ. P. 12(h)(3) (requiring

19  the court to dismiss the action if subject matter jurisdiction is lacking).  There are two

20  types of motions to dismiss for lack of subject matter jurisdiction: a facial attack, and a

21  factual attack.  Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th

22  Cir. 1979).  Thus, a party may either make an attack on the allegations of jurisdiction

23  contained in the nonmoving party's complaint, or may challenge the existence of subject

24  matter jurisdiction in fact, despite the formal sufficiency of the pleadings.  Id.

25      When a party makes a facial attack on a complaint, the attack is unaccompanied

26  by supporting evidence, and it challenges jurisdiction based solely on the pleadings.

27  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  If the motion to

28  dismiss constitutes a facial attack, the Court must consider the factual allegations of the

6

1   complaint to be true, and determine whether they establish subject matter jurisdiction.

2   Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir.

3   2003).  In the case of a facial attack, the motion to dismiss is granted only if the

4   nonmoving party fails to allege an element necessary for subject matter jurisdiction.  Id.

5   However, in the case of a facial attack, district courts "may review evidence beyond the

6   complaint without converting the motion to dismiss into a motion for summary judgment."

7   Safe Air for Everyone, 373 F.3d at 1039.

8           In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's

9   allegations."  Thornill, 594 F.2d at 733 (internal citation omitted).  The party opposing the

10  motion has the burden of proving that subject matter jurisdiction does exist, and must

11  present any necessary evidence to satisfy this burden.  St. Clair v. City of Chico,

12  880 F.2d 199, 201 (9th Cir. 1989).  If the plaintiff's allegations of jurisdictional facts are

13  challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the

14  mere assertion that factual issues may exist.  Trentacosta v. Frontier Pac. Aircraft Ind.,

15  Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche

16  Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)).  Furthermore, the district court may

17  review any evidence necessary, including affidavits and testimony, in order to determine

18  whether subject matter jurisdiction exists.  McCarthy v. United States, 850 F.2d 558, 560

19  (9th Cir. 1988); Thornhill, 594 F.2d at 733.  If the nonmoving party fails to meet its

20  burden and the court determines that it lacks subject matter jurisdiction, the court must

21  dismiss the action.  Fed. R. Civ. P. 12(h)(3).

22          A court granting a motion to dismiss a complaint must then decide whether to

23  grant leave to amend.  Leave to amend should be "freely given" where there is no

24  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

25  to the opposing party by virtue of allowance of the amendment, [or] futility of the

26  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

27  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

28  be considered when deciding whether to grant leave to amend).  Not all of these factors

1    merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

2    carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

3    185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

4    "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

5    Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

6    1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

7    1989) ("Leave need not be granted where the amendment of the complaint . . .

8    constitutes an exercise in futility . . . .")).

9

10                                    **ANALYSIS**

11

12      **A.  The "Public Disclosure" Bar:  Initial Considerations**

13         If a public disclosure has occurred and the Relator cannot qualify as an "original

14   source" of the false claim allegations, this Court lacks jurisdiction under the FCA over the

15   previously disclosed allegations.  See Rockwell Int'l Corp. v. United States, 549 U.S.

16   U.S. 457,472-73 (2007; United States ex rel. Meyer v. Horizon Health Corp., 565 F.3d

17   1195, 1199 (9th Cir. 2009). The resulting "public disclosure" bar seeks to "strike a

18   balance between encouraging private persons to root out fraud and stifling parasitic

19   lawsuits" in which "opportunistic plaintiffs who have no significant information to

20   contribute of their own" seek to collect a share of the government's recovery.  Graham

21   Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 559 U.S. 280, 295 (2010).

22         By its Memorandum and Order filed March 26, 2014 in this matter (ECF No. 105),

23   this Court determined that the statutory bar, in effect at the time Relator's initial

24   complaint was filed on November 4, 2009, governs.  As amended in 2006, that public

25   disclosure bar precludes jurisdiction over a qui tam action "based upon" previously

26   disclosed allegations, unless the party bringing the action qualifies as an "original source

27   of the information already disclosed:

28   ///

> **No court shall have jurisdiction over an [FCA qui tam] action . . . based upon the public disclosure of allegations** or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit or investigation, or from news media, **unless** the action is brought by the Attorney General or **the person bringing the action is an original source** of the information.

31 U.S.C. § 3730(e)(4)(A) (2006) (emphasis added).

The 2006 statute goes on to define the term "original source" as follows:

> For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

Id. at § 3730(e)(4)(B).

With these statutory provisions in mind, the Court next analyzes whether the allegations made by the federal case previously filed in 2007 are sufficient to constitute a public disclosure. If they are, then Plaintiff can avoid the jurisdictional bar only upon a showing that he is an "original source" as defined by the statute and case law. A-1 Ambulance Ser., Inc. v. California, 202 F.3d 1238, 1243 (9th Cir. 2000) (under two part test court need only address the original source issue if it first determines a prior public disclosure has occurred). Relator bears the burden of establishing that he qualified as an original source. See United States v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1018 (9th Cir. 1999) (holding that a relator bears the burden of establishing subject matter jurisdiction, including whether he is an "original source" under the statute).

Turning first to the initial question of disclosure itself, in order to determine whether the requisite dissemination has occurred, the court must make "two distinct but related determinations." A-1 Ambulance Serv., 202 F.3d at 1243. First, it must "decide whether the public disclosure originated in one of the sources enumerated in the statute." Id. If so, then the court must then decide "whether the disclosure consisted of the allegations or transactions giving rise to the relator's claims. . . ." Id.

9

1    The 2006 version of the statute unquestionably applies to actions filed in federal

2    court like the six 2007 lawsuits cited by Millenium, so the initial determination as to

3    whether the allegations originated from a source enumerated within the statute can

4    easily be answered in the affirmative.

5    The second prong creates more difficulty.  In order to constitute public disclosure,

6    "the publicly disclosed facts need not be identical with, but only substantially similar to,

7    the relator's allegations," U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195,

8    1199, (9th Cir. 2009), and need not be accompanied by "an explicit allegation of fraud."

9    Hagood v. Sonoma Cnty. Water Agency, 81 F.3d 1465, 1473 (9th Cir. 1996).  All that is

10   required for a public disclosure is that the "material elements" of the underlying

11   "transaction" be disclosed in the public forum.  A-1 Ambulance Serv., 202 F.3d at 1243.

12   In order to be preclusive, disclosure need not necessarily be comprehensive, but must

13   only contain "enough information to enable the government to pursue an investigation."

14   Alcan Elec., 197 F.3d at 1019.

15   Since prior public disclosures need not be identical with a Relator's subsequent

16   allegations to trigger the public disclosure bar, it follows that the standard for applying

17   the bar is not an onerous one.  See Schindler Elevator Corp. v. United States ex rel.

18   Kirk, 131 S. Ct. 1885, 1891-92 (2011) (admonishing courts against construing the public

19   disclosure bar too narrowly); Hagood, 81 F.3d at 1476 n.18 (9th Cir. 1996)

20   (characterizing "based upon" test as a "quick trigger").  Indeed, courts construe the

21   "based upon" language of 31 U.S.C. § 3730(e)(4)(A) liberally to prevent the "flourishing

22   of parasitic suits" that Congress sought to curtail with the public disclosure bar.  United

23   States ex rel. Biddle v. Bd. of Trs. of Stanford Univ, 161 F.3d 533, 537-40 (9th Cir.

24   1998).  Public disclosures that contain substantially similar allegations or transactions to

25   those later levied by a Relator suffice.  Meyer, 565 F.3d at 1199; United States ex rel.

26   Boothe v. Sun Healthcare Group, Inc., 496 F.3d 1169, 1174 (10th Cir. 2007) (dismissing

27   where "the essence" of FCA claim was contained in "a prior public disclosure.").

28   ///

1

2

**B.  Prior Federal Lawsuits Identify the Same Alleged Kickbacks Identified by Relator in this Proceeding**

3

4

5

6

7

8

9

Relator herein alleges that Millenium participated in a scheme and conspiracy to induce healthcare providers to use Integrilin through various means.  According to the SAC, the activities employed in that regard included funding grants (SAC, ¶¶ 6,7), paying speaker fees (Id. at ¶¶ 6, 7, 82-83, 99, 102, 104, 121,133-34), providing honoraria (Id. at ¶ ¶ 7, 82, 104-106), furnishing meals (Id. at ¶¶ 7, 14, 82, 91, 100, 102, 104-13, 116, 133-34) and funding preceptorships and advisory boards (Id. at ¶ 99). Relator alleges that these activities violated both the FCA and the AKS.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Examination of the five federal cases cited by Millenium shows markedly similar allegations with respect to the promotion of Integrilin.  In a federal complaint filed in Pennsylvania on February 16, 2007, Plaintiffs alleged that Millenium had "co-promoted Integrilin" with Schering since 1998 (Def.'s Request for Judicial Notice ("RJN"), Ex. 1 at ¶¶ 37-38) and that Schering and its "co-conspirators" had engaged in a scheme to "defraud" by causing Integrilin (along with other "Subject Drugs") to be prescribed "due to kickbacks, bribes and payment or provision of illegal remuneration or other inducements."  Id. at ¶¶  177-80; see also id. at ¶ 2 (defining "Subject Drugs" as including Integrilin).  The complaint went on to specifically reference both the FCA and the AKS (id. at ¶¶ 10, 13-16).  It alleged kickbacks that ran afoul of both Medicare, Medicaid, and TRICARE program regulations (id. at ¶¶ 13-16), alleged that defendants' conspiracy included an intent to "violate federal and state laws and to defraud" (id. at ¶ 178), and described thirteen forms of kickbacks, including "lavish entertainment," "phony speaker fees a/k/a 'honorariums,'" "phony grants," "phony preceptorships,"  and "[u]sing 'advisory board meetings' as inducements."  Id. at ¶ 4.

25

26

27

28

Second, a federal complaint filed in Massachusetts roughly two months later, on April 4, 2007, contained similar allegations.  There, plaintiffs also alleged that Millenium had "co-promoted Integrilin with Schering since 1998 (RJN Ex. 2 at ¶ 31), and that the companies co-conspired to "defraud" by causing Integrilin, along with other "Subject

1  Drugs," to be "prescribed . . . due to kickbacks, bribes and payment of provision of illegal

2  remuneration or other inducements."  Id. at ¶ 90; see also id. at n.1 (defining "Subject

3  Drugs as including Integrilin").  According to the Massachusetts  complaint, the

4  conspirators "discussed and agreed" to "offer" kickbacks to "further proper sales of these

5  Subject Drugs for both indicated and off-label uses" to obtain "additional revenues and

6  profits from the illegal promotion and sale."  Id. at ¶ 94(a); see also id. at ¶ 75(c) (alleging

7  that "kickbacks, bribes and/or other payments or provision of illegal remuneration or

8  inducements [were provided] to induce physicians and other healthcare providers" to

9  prescribe the drugs).

10  Essentially identical allegations were repeated in two more federal complaints

11  filed in Massachusetts on April 27, 2007, and May 10, 2007, respectively.  RJN Exs 3, 4.

12  Then, on July 3, 2007, yet another plaintiff, this time in Florida, filed a federal complaint

13  alleging that Millenium had "co-promoted Integrilin" with Schering since 1998 (RJN Ex. 5

14  at ¶¶ 28-29).  That complaint, similar to its predecessors, alleged that the companies

15  "engaged in a continuing conspiracy and/or concerted action to violate federal and state

16  laws and to defraud" by causing physicians to prescribe Integrilin (and other "Subject

17  Drugs") due to "kickbacks, bribes and payment or provision of illegal remuneration or

18  other inducements."  Id. at ¶ 87.  The purported kickback scheme took multiple forms,

19  including "phony speaker fees paid for by honorariums" (id. at ¶ 33), "phony grants" (id.

20  at ¶ 34), "lavish entertainment and excessive gift-giving" in connection with investigator

21  and speaker meetings.  Id. at ¶ 36.

22  Relator's opposition to the sufficiency of the prior allegations rests exclusively with

23  the proposition that since the allegations of the prior lawsuit relate to a group of "Subject

24  Drugs," the allegations are not specific enough to constitute a public disclosure as to

25  Integrilin itself.  Relator does not dispute, however, that the prior lawsuits specifically

26  include Integrilin as one of the seven "Subject Drugs" at issue in those lawsuits.  Instead,

27  Relator claims only that such "generic" allegations are insufficient to put the government

28  on notice about a particular scheme to investigate, since allegations relating to multiple

1   drugs simultaneously cannot suffice.[6]  As Millenium points out, however, Relator offers

2   no legal support for its proposition in this regard, and the Court concludes that Relator's

3   argument runs counter to the principles underlying the FCA.  As stated above, applicable

4   case law makes it clear that the standard for assessing whether facts have already been

5   disclosed is a liberal one.  Prior allegations need only be similar to those subsequently

6   advanced by a Relator; they need not be identical.  Meyer, 565 F.3d at 1199.

7   Significantly too, as enumerated earlier in this Memorandum and Order, the Supreme

8   Court made it abundantly clear in Schindler, that the public disclosure bar is properly

9   construed as "wide reaching" and having a broad meaning" and should consequently not

10  be interpreted narrowly.  Schindler, 131 S. Ct. at 1891-92.  The fact that the prior 2007

11  complaints at issue here used the term "Subject Drugs" to avoid repeating the names of

12  seven drugs—one of which was Integrilin—hundreds of times does not make the

13  allegations any less compelling given the broad interpretation that mandated by

14  applicable case law.  Consequently this Court finds that the prior allegations of Integrilin

15  being included within a list of "Subject Drugs" subject to remarkably similar allegations of

16  kickbacks and "off market" use is more than enough to constitute prior disclosures.

17       The Court therefore concludes that the allegations in any one of the five 2007

18  cases were sufficient to support a governmental investigation into allegedly improper

19  marketing schemes and alleged kickbacks provided by Millenium as the co-promoter of

20  Integrilin.  When viewed collectively, however, such a determination is inescapable.

21              **C.  The Prior Federal Lawsuits Also Allege Similar Off-Label Use**

22       Relator fares no better with respect to his additional allegations that Millenium

23  caused the submission of false claims by "presenting physicians with false information

24  about off-label uses of Integrilin and encouraging physicians to prescribe Integrilin for

25  such uses and procure the drug for such uses which were not approved by the FDA or

26  any relevant drug compendium."  SAC, ¶ 157.  According to Relator, such improper

27  ───────────────

       [6] Relator asserts that the only marketing allegation made with regard to Integrilin alone (as
28  opposed to Integrilin included within the enumerated "Subject Drugs") rests with the provision of free
    samples of Integrilin, an allegation not made in the prior 2007 lawsuits.

1    promotion "caused physicians and facilities to submit numerous bills for Integrilin that

2    were ineligible for reimbursement under Medicaid, Medicare, and TRICARE because the

3    drug [was] used for an off-label use." Id.; see also id. at ¶ 163 (Defendants, including

4    Millenium, made "false and fraudulent representations "to physicians that Integrilin was

5    safe and effective for use in off-label patient populations.").

6           Comparing these allegations to the prior 2007 federal complaints, we again see

7    striking parallels.  The Pennsylvania action, filed February 16, 2007, alleges that

8    Millennium, along with Schering, promoted Integrilin (and other "Subject Drugs") for

9    "non-indicated/unapproved or 'off-label' uses." Id. at ¶ 3; see also id. at ¶ 2 (defining

10   "Subject Drugs" as including Integrilin).  The complaint went on to allege that the

11   purported conspirators, including both Schering and Millenium, created a ""fraudulent

12   scheme" to derive "huge profits from their illegal and improper promotions of these

13   Subject Drugs for off label uses . . . ." Id. at ¶ 182(a).  Moreover, the federal complaint

14   filed in Massachusetts on April 4, 2007, similarly identified wrongful prescriptions of

15   Subject Drugs, including Integrilin, "for off-label uses that were not approved by the FCA

16   and were not scientifically proven to be safe, efficacious, effective, or useful for the

17   conditions for which such Subject Drugs were prescribed, administered or otherwise

18   provided."  RJN Ex. 2 at ¶ 91.  The same off-label allegations were levied in the other

19   two Massachusetts complaints filed on April 27, 2007, and May 10, 2007,  RJN Ex. 3; at

20   ¶ 2; RJN ex. 4 at ¶ 2.  Moreover, with regard to the July 3, 2007, Florida lawsuit, the

21   plaintiff in that case contended that Millenium, along with Schering, engaged in a

22   "conspiracy and/or concerted action to defraud" by causing Integrilin to be prescribed

23   (along with other "Subject Drugs) "for off label uses that were not approved by the FDA

24   and were not scientifically proven to be safe, efficacious, effective or useful.  RJN Ex. 5

25   at ¶ 88.  All of these allegations are substantially similar to those alleged by Relator

26   herein.

27          Therefore, with respect to both Relator's kickback and off-label use allegations,

28   the Court finds the present complaint is "based upon" public disclosures previously made

1    in a statutorily enumerated source, here the five 2007 complaints filed in federal court.

2    31 U.S.C. § 3730(e)(4)(A) (2006).

3    **D.  Relator Cannot Qualify as an Original Source**

4    Relator can still establish subject matter jurisdiction, however, if he can show he

5    qualified as an "original source" for his kickback and off-label FCA claims against

6    Millenium.  Id.  Ninth Circuit law makes it clear that in order "[t]o qualify as an original

7    source, a relator must show that he or she [1] has direct and independent knowledge of

8    the information on which the allegations are based, [2] voluntarily provided the

9    information to the government before filing his or her qui tam action, and [3] had a hand

10   in the public disclosure of allegations that are a part of . . . [the] suit."  Meyer, 565 F.3d at

11   1201 (citing U.S. ex rel. Lujan v. Hughes Aircraft Co., 162 F.3d 1027, 1033 (9th Cir.

12   1998)). Although only the first two requirements are explicitly set forth in the statute (the

13   2006 version of 31 U.S.C. § 3730(e)(4)(B)), the Ninth Circuit has found the third and final

14   prerequisite to be an "additional requirement" implicit in the statutory scheme.  United

15   States v. Johnson Controls, Inc., 457 F.3d 1009, 1013 (9th Cir. 2006) (citing Wang

16   ex rel. U.S. v. FMC Corp., 975 F.2d 1412, 1418 (9th Cir. 1992)).

17   The Wang court underscores the need to impose the third requirement by

18   explaining that if "someone republishes an allegation that already has been disclosed,

19   he cannot bring a qui tam suit, even if he had 'direct and independent knowledge of the

20   fraud.  He is no 'whistleblower.'  A 'whistleblower' sounds the alarm; he does not echo it."

21   Wang, 975 F.2d at 1419.

22   Although it appears that given Relator's position as a salesmen for Defendants he

23   may well have direct and independent knowledge of the subject matter of the allegedly

24   fraudulent claims, and while Relator claims he did provide the information to the

25   government before filing his suit, it looks uncontroverted that he had nothing to do with

26   the initial public disclosure made in the five federal lawsuits filed in 2007, some two

27   years before Relator filed the present qui tam action in 2009.  Relator has presented no

28   evidence that he "had a hand" in the prior 2007 litigation.  To demonstrate such

1    involvement, Relator "must have directly or indirectly been a source to the entity that

2    publicly disclosed the allegations on which [the] suit was based." Wang, 975 F.2d at

3    1418 (quoting United States ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13, 16

4    (2nd Cir. 1990)).  As Millenium notes, Relator was not a plaintiff in any of the prior

5    lawsuits that alleged kickbacks and off-label promotion to increase Integrilin sales, and

6    was not mentioned as a source of information in any of the complaints.   Not surprisingly,

7    Relator makes no attempt to connect himself with the public disclosures made in that

8    case, a shortcoming which prevents him from qualifying as an "original source" that

9    would permit him to maintain this qui tam suit with respect to the kickback and off-label

10   allegations he asserts.

11        In sum, then, Millenium has demonstrated that the gravamen of Relator's

12   remaining claims against it were already publicly disclosed in the prior 2007 federal

13   lawsuits.  Because Relator has not met his burden of proof in showing that he was an

14   original source of those allegations, the public disclosure bar applies and prevents

15   Relator from maintaining any of the three causes of actions rooted in the federal FCA

16   and asserted against Millenium.  In addition, although Relator goes on to assert some

17   additional claims predicated on the false claims laws of some 28 states, because those

18   claims also hinge on the same false claim analysis set forth above, they too fail as

19   against Millenium.  Moreover, even were the state law claims to have some viability

20   apart from the merits of the federal FCA claims alleged against Millenium, which the

21   Court believes they do not, in the absence of any predicate federal claim the Court

22   declines to exercise supplemental jurisdiction over the state law claims against Millenium

23   in any event.   See Gorstein v. World Savings Bank, 110 F. App'x 9, 10-11 (9th Cir.

24   2004) (district court has discretion to decline to exercise supplemental jurisdiction).

25   ///

26   ///

27   ///

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For all the reasons stated above, Defendant Millenium's Motion to Dismiss, ECF No. 114, is GRANTED.  Because the Court does not believe that the jurisdictional infirmities of Relator's claims against Millenium can be rectified through further amendment, no additional leave to amend will be permitted.  Finally, since the Court concludes that it lacks jurisdiction over Relator's claims against Millenium in the first instance, Millenium's alternative motions challenging the substance of Relator's claims are moot.  Plaintiff's Motion to Dismiss (ECF No. 116) and Motion to Strike (ECF No. 117) are accordingly DENIED on that basis.

IT IS SO ORDERED.

Dated:  March 25, 2015

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

17